# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

LATANYA L. RICHARDSON and )
REGINALD E. PARKER, )
                             )
         Plaintiffs, )
                             )
         v. )
                             )     C.A. No. 2024-0775-CDW
NEW RESIDENTIAL )
MORTGAGE LOAN TRUST )
2019RPL3, MR. COOPER, and )
LOGS LEGAL GROUP, LLP, )
                             )
         Defendants. )

## <u>REPORT GRANTING MOTION TO DISMISS</u>

Date Submitted:  April 14, 2025
Date Decided:  August 29, 2025

Latanya L. Richardson, Atco, New Jersey; *Plaintiff*

Reginald E. Parker, Atco, New Jersey; *Plaintiff*

Geoffrey G. Grivner, Kody M. Sparks, BUCHANAN INGERSOLL & ROONEY PC, Wilmington, Delaware; *Counsel for Defendants New Residential Mortgage Loan Trust 2019RPL3 and Nationstar Mortgage LLC d/b/a Mr. Cooper*

**WRIGHT, M.**

Plaintiffs own a house in New Jersey. The house has a mortgage on it, issued in 2007 when plaintiffs refinanced their then-existing mortgage. Five years ago, plaintiffs stopped paying on the mortgage. The mortgage holder sought to foreclose on the house and filed a foreclosure action in New Jersey state court. Plaintiffs fought the foreclosure there and lost—the court entered a final judgment for the mortgage holder and ordered the property to be sold at a sheriff's sale.

Still hoping to prevent the sale of their house, plaintiffs tried to move the battle across the Delaware River. They filed a complaint in this court against the mortgage holder, the mortgage loan servicer, and the law firm which represented the mortgage holder in the New Jersey foreclosure action. The complaint—which is strikingly similar in substance to the defenses plaintiffs raised in the New Jersey foreclosure action—asserts three claims, arguing (1) the mortgage's securitization in 2007 and the subsequent assignments of the mortgage are invalid, (2) defendants are improperly foreclosing on a paid note, and (3) defendants engaged in predatory lending with the various mortgages issued to plaintiffs in the 2004–2007 timeframe. For relief, plaintiffs ask the court to declare that the New Jersey foreclosure action is "void and unenforceable" and award them damages. Two of the

three defendants say the complaint must be dismissed because it fails to state any claim upon which relief can be granted.

The court agrees, for three reasons. First, the claims asserted in the complaint are claims plaintiffs raised or could have raised in the New Jersey foreclosure action, so the doctrine of *res judicata* bars plaintiffs from relitigating them here. Second, the claims asserted in the complaint are impermissible collateral attacks on the New Jersey court's judgment. Third, for two of the three claims, plaintiffs either lack standing to assert the claims or the claims challenge conduct that occurred many years ago for which no tolling exists, so plaintiffs cannot assert them now. In short, plaintiffs' claims are either repetitive, non-existent, or stale. I recommend the complaint be dismissed in its entirety.

## I. FACTUAL BACKGROUND

### A. The Parties

Plaintiffs Latanya L. Richardson ("Richardson") and Reginald E. Parker are the record owners of property located at 21 Yale Road in Atco, New Jersey ("Property").[1]

---

[1] Pls.' Compl. ("Compl.") ¶¶ 1, 6, Docket Item ("D.I.") 1. The Complaint contains 19 pages. The first three pages are the court's form verified complaint filled out by hand, and the remaining 16 pages are typewritten. Most citations in this report are to the typewritten portion of the Complaint. The few citations to the handwritten

Defendant New Residential Mortgage Loan Trust 2019RPL3 ("New Residential") is the record holder of a mortgage on the Property, and the party that filed a foreclosure action against Plaintiffs in New Jersey ("Foreclosure Action").[2]  Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper ("Nationstar" and, jointly with New Residential, "Loan Defendants") issued mortgage loans to Plaintiffs in 2006 and 2007.[3]  Nationstar is the party that assigned and transferred the mortgage rights to New Residential.[4]  Defendant Logs Legal Group, LLP is the law firm that represented New Residential in the Foreclosure Action.[5]

## B.    Richardson Inherits the Property and Secures and Later Refinances a Mortgage on It

Richardson inherited the Property from her grandparents in 2002, and it was "free from any liens or encumbrances" when Richardson acquired it.[6] In 2004, Plaintiffs "secured a $30,000 subprime adjustable-rate mortgage

---

portion of the Complaint will include the notation "handwritten" before the paragraph or page citation.

[2] *See* Compl. ¶¶ 3, 12, 15(a)–(c), 22–28(f).

[3] *See* Compl. ¶¶ 7, 15(c), 28(c).

[4] *See* Compl. ¶¶ 7, 14–15(c), 28–28(c).

[5] Civil Action Compl., *New Residential Mortg. Tr. 2019-RPL3 v. Richardson, et al.*, Dkt. No. F-012321-22 (N.J. Super. Ct. Ch. Div., Nov. 15, 2022) ("Foreclosure Compl.").  Logs Legal Group has not participated in this action.  The docket entries also indicate that it may not have been properly served.

[6] Compl. ¶ 6.

from Ameriquest[.]"[7] ("2004 Mortgage"). Plaintiffs allege that the Ameriquest agent "unjustly enriched themselves with $29,030 in equity through unauthorized revisions to a HUD-1 statement . . . [that] inflated the mortgage to $61,000[.]"[8] In "August 2006 . . . Ameriquest went out of business[.]"[9] Around this time, Nationstar "issu[ed] another subprime adjustable-rate mortgage" to Plaintiffs, to refinance the 2004 Mortgage from Ameriquest.[10]

The next year, Plaintiffs refinanced their mortgage with Nationstar ("2007 Mortgage").[11] The 2007 Mortgage was recorded in the "Camden County Clerk's Office on December 28 . . . as instrument number 2007126770, Book 8375, Page 1697."[12] On August 29, 2022, Nationstar "assigned said Mortgage to New Residential Mortgage Loan Trust 2019-RPL3" which was recorded "in the Clerk's/Register's Office of Camden County, on October 25 [] in Book 12217, Page 905."[13]

---

[7] Compl. ¶ 6.

[8] Compl. ¶ 6.

[9] Compl. ¶ 7.

[10] Compl. ¶¶ 7, 39.

[11] Compl. ¶¶ 7, 39.

[12] Compl. ¶ 9.

[13] Foreclosure Compl. ¶ 5.

## C. New Residential Forecloses on the Property

On November 15, 2022, New Residential filed a foreclosure action in New Jersey Superior Court ("New Jersey Court") against Plaintiffs.[14] In its complaint, New Residential alleged that Plaintiffs and Nationstar executed "a loan modification agreement" in 2017.[15] New Residential further asserted that, beginning in June 2020, Plaintiffs "failed to pay the monthly installments of principal and interest, insurance and taxes due" and have not paid since.[16]

On May 21, 2024, the New Jersey Court entered a final judgment against Plaintiffs.[17] The New Jersey Court found that New Residential was owed "$221,255.42 on its mortgage described in the [Foreclosure Complaint] together with interest[.]"[18] The New Jersey Court ordered the Camden County Sheriff to "make sale according to law of so much of the mortgaged premises

---

[14] *See* Foreclosure Compl. (watermark from e-filing software). The court may take judicial notice of documents whose contents are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." D.R.E. 201(b). "If the accuracy of the subject document's contents is disputed, the Court may take judicial notice to discern . . . what was said therein . . . but may not take judicial notice to establish the truth of its contents." *Indemnity Insur. Corp., RRG v. Cohen*, 2018 WL 487246, at *1 (Del. Ch. Jan. 18, 2018).

[15] Foreclosure Compl. ¶ 3.

[16] *Id.*

[17] *See* Final J. for Foreclosure, *New Residential Mortg. Tr. 2019-RPL3 v. Richardson, et al.*, Dkt. No. F-012321-22 (N.J. Super. Ct. Ch. Div. May 21, 2024) ("Foreclosure J.") at 2.

[18] *Id.*

as will be sufficient to satisfy the said mortgage, interest and costs of [New Residential] and that [the Sheriff] pay out of the proceeds of sale to [New Residential] or its attorneys[.]"[19]

On February 5, 2025, the New Jersey Court stayed the Camden County Sheriff's sale of the property after Plaintiffs filed the complaint here.[20]

## II. PROCEDURAL POSTURE

Plaintiffs filed their complaint *pro se* on July 22, 2024.[21] Plaintiffs assert three counts: (1) a permanent injunction, enjoining Defendants from "foreclosing [on] [P]laintiffs [sic] property pursuant to the doctrine of promissory estoppel[;]"[22] (2) alternatively, finding the 2007 Mortgage was satisfied, and enjoining Defendants from foreclosing on it;[23] and (3) a declaratory judgment that Defendants engaged in predatory lending and awarding Plaintiffs damages.[24] Plaintiffs allege that the 2004 Mortgage was not properly conveyed to the special purpose entity created to hold the mortgage, and that the subsequent note and mortgage assignments were

---

[19] *Id.*

[20] *See* Order to Stay Sheriff Sale, *New Residential Mortg. Tr. 2019-RPL3 v. Richardson, et al.*, Dkt. No. F-012321-22 (N.J. Super. Ct. Ch. Div. Feb. 5, 2025).

[21] *See generally* Compl.

[22] *Id.* ¶ 37.

[23] *Id.* ¶¶ 29–37.

[24] *Id.* ¶¶ 38–45.

fabricated or invalid, rendering them void.[25]  Plaintiffs also maintain that

Nationstar lacked the authority to enter into any agreement concerning rights

it did not legitimately own, and failed to inform Plaintiffs of the mortgage

assignment in violation of federal law, thereby voiding the transfer.[26]  Finally,

in 2007 Defendants allegedly induced Plaintiffs to take a subprime loan with

excessively high interest rates   by misrepresenting and withholding key

mortgage terms.[27]

     On September 26, 2024, Loan Defendants moved to dismiss,[28] and on

October 18 filed the opening brief in support of their motion.[29]  On November

19, Plaintiffs filed their brief in opposition to the motion to dismiss.[30]  Besides

arguing in general terms they have alleged sufficient facts to defeat the motion

---

[25] *Id.* ¶¶ 21–22.

[26] *Id.* ¶ 31.

[27] *Id.* ¶¶ 39–40. Plaintiffs also allege Nationstar engaged in an assortment of conduct arising from the 2007 mortgage, but do not elaborate beyond listing what Plaintiffs claim are "unsafe and unsound" financial practices.  *See id.* ¶ 41.

[28] D.I. 22.

[29] D.I. 26.

[30] D.I. 29.

to dismiss, Plaintiffs attempted to assert four new causes of action.[31]  On December 5, Loan Defendants filed their reply brief.[32]

On January 17, 2025, the court scheduled oral argument on the motion to dismiss for March 4.[33]  On February 3, Plaintiffs filed a "Pro Se Motion for Emergency Temporary Restraining Order and Temporary Injunction."[34]  That same day, after reviewing the TRO motion, the court issued an order setting a briefing schedule for the TRO motion and informing the parties that argument on the TRO motion would be heard on March 4 with the motion to dismiss.[35]

---

[31] *Id.*  The claims are (1) "Violation of the Paperwork Reduction Act—Failure to Display Valid OMB Control Numbers"; (2) "Discharge of Debt"; (3) "Truth in Lending Act (TILA) and Real Estate Settlement Procedures Act (RESPA) Violations"; and (4) "New Jersey Uniform Fraudulent Transfer Act (NJUFTA)." *Id.* at 5–8.  Delaware law does not allow Plaintiffs to amend the Complaint through arguments in their brief opposing the motion to dismiss. *See, e.g.*, *MCG Cap. Corp. v. Maginn*, 2010 WL 1782271, at *5 (Del. Ch. May 5, 2010) ("When defendants filed their motions to dismiss [plaintiff] had a choice to make under Court of Chancery Rule [15(a)(5)].  It could either seek leave to amend its complaint or stand on its complaint and answer the motion to dismiss.  Having chosen the latter course of action, it is bound to the factual allegations contained in its complaint. It cannot supplement the complaint through its brief.").  Plaintiffs' status as self-represented litigants does not excuse them from this requirement. *See Shaw v. New Castle County*, 2022 WL 3226773, at *3 (Del. Ch. Aug. 10, 2022).  The court therefore has not considered these claims.

[32] D.I. 32.

[33] D.I. 33.

[34] D.I. 34 ("TRO motion").

[35] D.I. 38.

On March 4, the court heard oral argument on both motions. The court denied the TRO motion from the bench and took the motion to dismiss under advisement.[36]

On April 14, Plaintiffs filed a document oddly titled "Defendant's Motion to Compel Production of Original Note and Mortgage,"[37] along with an affidavit from Plaintiffs[38] and several exhibits.[39] It is not a discovery motion under Court of Chancery Rule 37(a) but instead contains an additional (and new) argument against Loan Defendants' motion to dismiss.[40] The court has not considered the arguments made in this submission because they are untimely.[41]

## III. ANALYSIS

Loan Defendants moved to dismiss this action under Court of Chancery Rule 12(b)(6).[42] Loan Defendants argue that Plaintiffs' claims are (1) barred by the doctrine of *res judicata*, (2) impermissible collateral attacks on a

---

[36] D.I. 47–48.

[37] D.I. 50.

[38] D.I. 52.

[39] D.I. 51.

[40] *See* D.I. 50 at 1–4.

[41] "The argument was not raised in the briefing on the [m]otion to [d]ismiss, and, therefore, has been waived." *Asbestos Workers Loc. 42 Pension Fund v. Bammann*, 2015 WL 2455469, at *17 n.136 (Del. Ch. May 21, 2015).

[42] D.I. 26.

foreign state court's judgment, (3) time barred under the relevant statutes of limitations, and (4) barred because Plaintiffs lack standing to bring them.[43]

When reviewing a motion to dismiss under Rule 12(b)(6), Delaware courts "(1) accept all well pleaded factual allegations as true[;] (2) accept even vague allegations as 'well-pleaded' if they give the opposing party notice of the claim; [and] (3) draw all reasonable inferences in favor of the non-moving party[.]" *Fitzgerald v. Fitzgerald Home Farm, LLC*, 2024 WL 1071970, at *2 (Del. Ch. Mar. 12, 2024) (citing *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011)). The court need not accept conclusory allegations unsupported by specific facts, nor draw unreasonable inferences in Plaintiffs' favor. *Garfield ex rel. ODP Corp. v. Allen*, 277 A.3d 296, 319 (Del. Ch. 2022) (citing *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009)); *see also In re Hennessy Cap. Acq. Corp. IV S'holder Litig.*, 318 A.3d 306, 318 (Del. Ch. 2024).

"[T]he governing pleading standard in Delaware to survive a motion to dismiss is reasonable 'conceivability.'" *Cent. Mortg. Co.*, 27 A.3d at 537. Delaware courts must "deny the motion unless the plaintiff[s] could not recover under any reasonably conceivable set of circumstances." *Cent.*

---

[43] *See* D.I. 26 at 5–10.

*Mortg. Co.*, 27 A.3d at 536 (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)). Under this standard, "[w]hen a defendant asserts an affirmative defense, like *res judicata*, as a basis for pleading stage dismissal, that motion to dismiss will be granted only if 'the plaintiff can prove no set of facts to avoid it[.]'" *Fortis Advisors LLC v. Shire US Hldgs., Inc.*, 2020 WL 748660, at *3 (Del Ch. Feb. 13, 2020) (quoting *Reid v. Spazio*, 970 A.2d 176, 183–84 (Del. 2009)).

The rest of this report analyzes the first three arguments offered by Loan Defendants in favor of dismissal. First, the court addresses Loan Defendants' *res judicata* defense. Second, the court addresses Loan Defendants' argument that Plaintiffs' claims are collateral attacks on the Foreclosure Action. Finally, the court addresses Loan Defendants' arguments that Plaintiffs lack standing to assert claims or the claims are time-barred under the applicable statute of limitations or the equitable doctrine of laches.

## A. Plaintiffs' Claims Are Barred by *Res Judicata*

Loan Defendants contend that since the Foreclosure Action was resolved by a final judgment in the New Jersey Court, this court must grant their motion to dismiss. Loan Defendants argue this court is bound by the Foreclosure Judgment under the Full Faith and Credit Clause of the United

– 11 –

States Constitution and thus this lawsuit cannot proceed under the doctrine of *res judicata*.[44]

The Full Faith and Credit Clause requires that full faith and credit be given "in each State to the . . . judicial Proceedings of every other State." U.S. Const. art. IV, §1; *see also* 28 U.S.C. § 1738 (2012) (requiring all courts to treat a state court judgment as it would be treated in the courts of the rendering state). The Full Faith and Credit Clause "has long been understood to incorporate the concepts of *res judicata* and collateral estoppel." *Matter of Vale*, 2014 WL 721038, at *3 (Del. Ch. Feb. 19, 2015).

*Res judicata* is an affirmative defense that "prevents a party from "bringing a second suit based on the same cause of action after a judgment has been entered in a prior suit involving the same parties." *MHS Capital LLC v. Goggin*, 2018 WL 2149718, at *17 (Del. Ch. May 10, 2018); *see also* Ct. Ch. R. 8(c). "The doctrine of *res judicata* exists for many reasons, but among the most important are to prevent vexatious litigation and to promote the stability and finality of judicial decrees.'" *Fitzgerald,* 2024 WL 1071970, at *2 (citing *Maldonado v. Flynn*, 417 A.2d 378, 381 (Del. Ch. 1980)). The doctrine bars a claim if five elements are met:

---

[44] *See* D.I. 26.

(1) the original court had jurisdiction over the subject matter and the parties;

(2) the parties to the original action were the same as those parties, or in privity, in the case at bar;

(3) the original cause of action or the issues decided was the same as the case at bar;

(4) the issues in the prior action must have been decided adversely to the [plaintiffs] in the case at bar; and

(5) the decree in the prior action was a final decree.

*Dover Hist. Soc., Inc. v. City of Dover Plan. Comm'n*, 902 A.2d 1084, 1092 (Del. 2006) (paragraph breaks added). "The bar of *res judicata* applies to all theories which were or could have been litigated in the earlier proceeding." *Showalter v. Cnty. Council of Sussex*, 1984 WL 159374, at *2 (Del. Ch. Dec. 13, 1984).

The court finds all five elements necessary to apply the doctrine of *res judicata* exist in this case: the New Jersey Court had jurisdiction; the parties in the Foreclosure Action are the same parties or in privity with them; the Foreclosure Action decided each of the issues in this case; and the Foreclosure Judgment was a final decree. My examination of each element follows.

### 1. The New Jersey Court Had Jurisdiction Over the Parties in the Foreclosure Action

Plaintiffs are the owners of the Property, which is located in New Jersey.[45] Because Plaintiffs say they reside at the Property, the court concludes that the New Jersey court had jurisdiction over Plaintiffs. *See Lebel v. Everglades Marina, Inc.*, 558 A.2d 1252 (N.J. 1989) (discussing when New Jersey courts have general personal jurisdiction); *Helicopteros Nacionales de Colum., S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984) (outlining general personal jurisdiction); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 79 (A.L.I. 1988).[46] The New Jersey Court had jurisdiction over New Residential because New Residential consented to the New Jersey Court's jurisdiction when it field the Foreclosure Action. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 79 (A.L.I. 1988).

### 2. The Parties in This Litigation Are the Same or in Privity with Those in the Foreclosure Action

Privity is a legal determination by a court as to whether a relationship between parties is close enough to support preclusion. *Aveta Inc. v. Cavallieri*, 23 A.3d 157, 180 (Del. Ch. 2010) (quoting *Higgins v. Walls*, 901 A.2d 122, 138 (Del. Super. 2005)). Parties are in privity for the purposes of

---

[45] *See* Compl. ¶¶ 1, 8.

[46] *See also* Compl. ¶ 1 (stating Plaintiffs reside in New Jersey).

*res judicata* when "their interests are identical or [so] closely aligned such that they were actively and adequately represented in the first suit." *Aveta Inc. v. Cavallieri*, 23 A.3d 157, 180 (Del. Ch. 2010).

New Residential and Nationstar were the transferee and transferor of Plaintiffs' mortgage.[47] Plaintiffs attacked the Foreclosure Action, in part, by challenging the validity of the mortgage assignments.[48] Because New Residential acquired Nationstar's rights and interests in Plaintiffs' mortgage, Loan Defendants have an identical interest in affirming the validity of that assignment. Their interests in the Foreclosure Action were identical and New Residential's participation was enough to "actively and adequately" represent Nationstar in the Foreclosure Action. New Residential and Nationstar are in

---

[47] Compl. ¶¶ 3, 7, 12, 14–15(c), 22–28(f).

[48] *See* Contested Answer, *New Residential Mortg. Tr. 2019-RPL3 v. Richardson, et al.*, Dkt. No. F-012321-22 (N.J. Super. Ct. Ch. Div. Mar. 27, 2023), Transaction ID CHC202389777.

privity for purposes of *res judicata*. The parties here are either parties in the Foreclosure Action[49] or in privity with those in the Foreclosure Action.[50]

### 3. The Foreclosure Judgment Resolved the Same Issues Plaintiffs Raise in This Action

Plaintiffs ask the court to declare their mortgage obligation satisfied, declare its 2022 transfer from Nationstar to New Residential invalid, find that Loan Defendants engaged in predatory lending practices, and award Plaintiffs damages.[51]

Loan Defendants contend the issues Plaintiffs seek to litigate are the same as those brought in the previous case or are claims that could have been raised in the New Jersey litigation.[52] Further, Loan Defendants assert

---

[49] Logs Legal was Nationstar's counsel of record in the Foreclosure Action, and Plaintiffs do not allege Logs Legal participated or engaged in any of the underlying activity giving rise to this dispute. Plaintiffs do allege in general terms that all defendants here committed wrongdoing. *See generally* Compl. But New Residential was not formed until September 27, 2019, long after the events described in Plaintiffs' complaint. *Entity Details, File Number 7629716*, Delaware Department of State: Division of Corporations (Aug. 25, 2025), https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx.

[50] *See* D.I. 26, Defs.' Ex. ("DX") B (naming Plaintiffs and New Residential in the Foreclosure Action and listing Defendant Logs Legal as counsel of record); Compl. (outlining the transfer of mortgage rights to New Residential and their predecessors in interest, including Nationstar).

[51] *See* Compl. ¶¶ 3 (handwritten), 6–7 (handwritten), 15–16, 20–32, 37, 39–41, 43, 45. *See also id.* at 16 (wherefore clauses).

[52] *See* D.I. 26 at 5–6; D.I. 32 at 6–7. *Compare* Compl. *with* Contested Answer, *New Residential Mortg. Tr. 2019-RPL3 v. Richardson, et al.*, Dkt. No. F-012321-22 (N.J. Super. Ct. Ch. Div., Mar. 27, 2023), Transaction ID CHC202389777.

Plaintiffs have not pled any facts that explain why their claims could not have been raised in the Foreclosure Action. Plaintiffs counter that they only recently learned of these claims "despite due diligence[,]" and this warrants relitigating this dispute here.[53] Plaintiffs' argument is not persuasive.

Delaware courts follow the transactional approach to *res judicata. LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 193 (Del. 2009). Under the transactional approach, Delaware courts must determine whether "the plaintiff 'neglected or failed to assert claims which in fairness should have been asserted in the first action.'" *LaPoint*, 970 A.2d at 193–94 (quoting *Kossol v. Ashton Condo. Ass'n, Inc.*, 1994 WL 10861, at *2 (Del. Jan. 6, 1994)). "[R]*es judicata* does not operate to bar claims based on facts that were not, and could not have been, known to the plaintiff" at the time of the first action. *LaPoint*, 970 A.2d at 193 (citing *AmBase Corp. v. City Inv. Co. Liquid. Tr.*, 326 F.3d 63, 73 (2d Cir. 2003)).

Plaintiffs failed to plead any facts that create a reasonable inference that they could not have known the basis for their claims at the time of the Foreclosure Action. Additionally, every claim Plaintiffs assert in their complaint mirrors or closely resembles Plaintiffs' defenses in the Foreclosure

---

[53] *See* D.I. 29 at 5. The court interprets this as an attempt to invoke the discovery rule, which is explained below.

Action.[54]  The issues Plaintiffs seek to litigate were thus already decided in the Foreclosure Action for the purposes of *res judicata*.

### 4. The Foreclosure Judgment Is a Final Judgment That Was Decided Adversely to Plaintiffs

A final judgment is one "which determines the merits of the controversy or rights of the parties and leaves nothing for future determination or consideration." *Showell Poultry, Inc. v. Delmarva Poultry Corp.*, 146 A.2d 794, 796 (Del. 1958).  "The test is whether such judgment or decree determines the substantial merits of the controversy and the material issues litigated[.]"  *Id.*

New Residential initiated litigation in New Jersey for the sole purpose of foreclosing on the Property.  Loan Defendants attached an order from the New Jersey Court to their motion.[55]  The order states that it is a "Final Judgment For Foreclosure" and orders the Property be sold and proceeds paid to New Residential.[56]  The court is satisfied that this is a final judgment for the purposes of *res judicata*.  The order resolved all material issues at controversy in the Foreclosure Action on the merits.  Finally, the Foreclosure

---

[54] *Compare* Compl., *with* Contested Answer, *New Residential Mortg. Tr. 2019-RPL3 v. Richardson, et al.*, Dkt. No. F-012321-22 (N.J. Super. Ct. Ch. Div. Mar. 27, 2023), Transaction ID CHC202389777.

[55] *See* D.I. 26, DX B.

[56] *Id.*

Action was decided adversely to Plaintiffs, since it was decided in favor of New Residential.[57]

Plaintiff's claims are barred by *res judicata*, and their complaint raises no reasonably conceivable facts or inferences that can avoid dismissal. The court recommends Loan Defendants' motion to dismiss be granted on this ground.

## B. Plaintiffs' Claims Are Also Impermissible Collateral Attacks on the Foreclosure Judgment

Even if *res judicata* does not foreclose Plaintiffs' claims, the claims are also impermissible collateral attacks on the Foreclosure Judgment. "A collateral attack is an attempt to 'avoid, defeat, evade, or deny the force and effect of a final order or judgment in an incidental proceeding other than by appeal, writ of error, certiorari, or motion for new trial.'" *Matter of Vale*, 2015 WL 721038, at *4 (Del. Ch. Feb. 19, 2015) (citing *Fransen v. Conoco, Inc.*, 64 F.3d 1481, 1487 (10th Cir. 1995)). "The 'principle barring collateral attacks' is 'a longstanding and deeply rooted feature of . . . the common law.'" *ETC Northeast Field Servs., LLC v. Muse*, 2024 WL 2797337, at *9 (Del. Ch. May 31, 2024) (quoting *Heck v. Humphrey*, 512 U.S. 477, 490 n.10 (1994)). The intent is to preclude attacks on other courts' judgments because "'it is for

---

[57] *See* D.I. 26, DX B.

the binding forum of the first instance to determine the question of validity of the law, and until its decision is reversed for error by orderly review . . . its orders based on its decision are to be respected.'" *ETC Northeast Field Servs.*, 2024 WL 2797337, at \*9 (quoting *In re Vale for Asche*, 2013 WL 721038, at \*5 (Del. Ch. July 19, 2013)).

The test for whether an action is an impermissible collateral attack is to determine if the claim aims to modify or nullify the other court's final judgment by revisiting the core issue in the previous claim. *Cf. ETC Northeast Field Servs.*, 2024 WL 2797337, at \*10 (articulating the standard in the context of an arbitration award). A claimant "may not transform what would ordinarily constitute an impermissible collateral attack into a proper independent action by changing defendants and altering the relief sought." *Gulf LNG Energy, LLC v. Eni USA Gas Mktg. LLC* 242 A.3d 575, 591 n.96 (Del. 2020) (quoting *Corey v. N.Y. Stock Exch.*, 691 F.2d 1205, 1212–13 (6th Cir. 1982)). "Where a claim involving 'different issues' between 'different parties' 'directly contradict[s]' a final order or judgment, it is considered a collateral attack and must be dismissed." *ETC Northeast Field Servs.*, 2024 WL 2797337, at \*9.

New Residential obtained the Foreclosure Judgment, a final judgment permitting it to foreclose on the Property.[58] Plaintiffs seek an injunction from this court barring Loan Defendants[59] from foreclosing on the Property in accordance with the Foreclosure Judgment.[60] Irrespective of the "different" claims and additional parties, the heart of the relief Plaintiffs seek directly contradicts and revisits the core issue of the Foreclosure Action—whether New Residential has the right to foreclose on the Property.

Plaintiffs assert the Property was not subject to a mortgage because the mortgage was discharged, the mortgage transfers were invalid, and Plaintiffs were victims of predatory lending practices or fraud.[61] These claims are attempts to have the court conclude that Plaintiffs were excused from paying on the mortgage and that Loan Defendants have no right to foreclose on the Property. Ruling in Plaintiffs favor would directly contradict what the New Jersey Court already concluded—that Plaintiffs are bound by the 2007 Mortgage and did not fulfill their obligations. The court finds this action is

---

[58] D.I. 24, DX B.

[59] Plaintiffs request that all Defendants be barred from foreclosing on the Property. Compl. at 13 (wherefore clause). New Residential is the only party with a current interest and valid judgment to do so. *See* Foreclosure J. at 1.

[60] *See* Compl. ¶¶ 18–37.

[61] *See generally* Compl.

an impermissible collateral attack on the Foreclosure Judgment and recommends that it be dismissed on those grounds.

**C.      Count I, Count III, and Plaintiffs' Free-Floating RESPA Claim Are Untimely or Plaintiffs Lack Standing to Pursue Them Even If They Are Not Precluded By *Res Judicata* or the Collateral Attack Doctrine**

Three of Plaintiffs' claims suffer from two fatal defects. First, Plaintiffs lack standing to assert claims for breach of the pooling and servicing agreement ("PSA") governing the securitization of the 2007 Mortgage. Second, Plaintiffs' claims for breach of the PSA (Count I), predatory lending (Count III), and violation of the federal Real Estate Settlement Procedures Act[62] are untimely because each of the claims appears to concern conduct that occurred between 11 and 20 years before Plaintiffs filed the Complaint. Plaintiffs waited too long to file their claims here, and the only defense Plaintiffs offer to contest the untimeliness of their claims—that these claims should not be precluded because Plaintiffs only recently discovered them— does not apply. The court recommends Plaintiffs' claims be dismissed on these bases also.

---

[62] 12 U.S.C. §§ 2601–2617 ("RESPA").

### 1. Plaintiffs Lack Standing to Assert a Claim for Breach of the Pooling and Servicing Agreement Governing the Securitization of the Loan

Plaintiffs call Count I a promissory estoppel claim,[63] but that is not what the substance of the claim appears to be. Rather, it appears Count I argues that the securitization of the loan associated with the 2007 Mortgage was improper, leading to breaches of the pooling and servicing agreement[64] governing the securitization,[65] so the court treats it as a claim that Defendants breached the PSA. Plaintiffs lack standing to allege the PSA's breach.

Generally, "only parties to a contract and intended third-party beneficiaries may enforce an agreement's provisions." *NAMA Hldgs., LLC v. Related World Mktg. Ctr., LLC*, 922 A.2d 417, 434 (Del. Ch. 2007). "A third-party beneficiary is an incidental beneficiary unless the parties to the contract intended to confer a benefit upon it." *Id.* "Mere incidental beneficiaries have no legally enforceable rights under a contract." *Id.* This doctrine applies to the injury element of standing because a party who has no rights under a

---

[63] *See* Compl. at 6.

[64] A pooling and servicing agreement is a contract that is executed in the process of securitizing asset-backed debt. *See generally Toelle v. Greenpoint Mortg. Funding, Inc.*, 2015 WL 5158276, at *4 (Del. Super. Apr. 20, 2015) (discussing securitization and the role PSAs play in the process).

[65] Compl. ¶ 28.e ("Defendants, and each of them, violated the pertinent terms of the PSA.").

contract is not injured by a breach alone. *See JPMorgan Chase Bank v. Smith*, 2014 WL 7466729, at *5 (Del. Super. Dec. 15, 2015) (holding that a litigant who is not a party or intended beneficiary "may not contest the validity of the assignment because any alleged misconduct would not be traceable to an injury suffered by the [litigant]."); *see also Citi Mortg., Inc. v. Bishop*, 2013 WL 1143670, at *4 (Del. Super. Mar. 4, 2013) (collecting cases); *Blagg v. HB2 Alt. Hldgs., LLC*, 2024 WL 4836715, at *5–6 (Del. Super. Nov. 20, 2024).

In the case of a securitized mortgage governed by a PSA, a mortgagor is typically not a party nor an intended beneficiary of the PSA. *See Toelle*, 2015 WL 5158276, at *3–4; *In re Walker*, 466 B.R. 271, 286 (Bankr. E.D. P.A. Feb. 13, 2012).

> [A]bsent a violation of the PSA affecting a debtor's ability to pay on the underlying loan, or the debtor being named a third party beneficiary to the PSA, the debtor lacks standing to contest the validity of an assignment of its note on the grounds that the PSA's terms were not followed by the parties involved in the transfer.

*Toelle*, 2015 WL 5158276, at *4 (citing *In re Walker*, 466 B.R. at 286).[66]

---

[66] Some courts have suggested plaintiffs may have standing to contest a foreclosure where the transfer is invalid but have required plaintiffs to allege facts that parties to the assignment contest its validity outside of merely separating the debt from the note. *See Shrewsbury v. The Bank of New York Mellon*, 160 A.3d 471, 476–78 (Del.

To assert a claim for violation of the PSA, Plaintiffs must allege they will suffer a separate, concrete injury affecting their mortgage obligations from the assignment or that they were parties to the PSA to have standing. Plaintiffs have not done either. Plaintiffs thus do not have standing to bring their claims asserting breach of the PSA and improper assignment.

### 2. Plaintiffs' Claims For Breach of the PSA, Predatory Lending, and Violation of RESPA Are Untimely

Under Delaware law, there are two methods the court uses to analyze the timeliness of a claim: the statute of limitations and the doctrine of laches. *See Lebanon Cnty. Empls.' Ret. Fund v. Collis*, 287 A.3d 1160, 1194 (Del. Ch. 2022). If a claim is legal and a party seeks relief which is available in a court of law, the court will apply the applicable statute of limitations. *Id.* If a claim is equitable or if equitable relief is sought for a legal claim, the court will apply the doctrine of laches to determine if the claim is timely. *Id.* "Laches is an affirmative defense that the plaintiff unreasonably delayed in bringing suit after learning of an infringement of [their] rights." *Levey v. Brownstone Asset Mgmt., LP*, 76 A.3d 764, 769 (Del. 2013). "Laches consists of two elements: (i) unreasonable delay in bringing a claim by a plaintiff with knowledge thereof, and (ii) resulting prejudice to the defendant." *Id.* "A filing

2017) (collecting cases); *see also Branch Banking Tr. Co. v. Eid*, 2013 WL 3353846, at *2–3 (Del. Super. June 13, 2013).

– 25 –

after the expiration of the analogous limitations period is presumptively an unreasonable delay for purposes of laches," *id.*, and the analogous statute of limitations applies absent "unusual conditions or extraordinary circumstances," *IAC/InterActiveCorp v. O'Brien*, 26 A.3d 174, 178 (Del. 2011).[67]

Under Title 10, Section 8121 of the Delaware Code, when a cause of action arises outside of Delaware, the shorter of the Delaware or foreign jurisdiction's statute of limitations controls. 10 *Del. C.* § 8121. Here, the Property is in New Jersey, Plaintiffs live in New Jersey, and Plaintiffs do not

---

[67] In *IAC/InterActiveCorp*, the Delaware Supreme Court noted that what constitutes "unusual conditions or extraordinary circumstances" can be hard to define and offered the following:

> There is no precise definition of what constitutes unusual conditions or extraordinary circumstances. The Court of Chancery must exercise its discretion, after considering all relevant facts. But several factors that could bear on the analysis include: 1) whether the plaintiff had been pursuing his claim, through litigation or otherwise, before the statute of limitations expired; 2) whether the delay in filing suit was attributable to a material and unforeseeable change in the parties' personal or financial circumstances; 3) whether the delay in filing suit was attributable to a legal determination in another jurisdiction; 4) the extent to which the defendant was aware of, or participated in, any prior proceedings; and 5) whether, at the time this litigation was filed, there was a bona fide dispute as to the validity of the claim.

26 A.3d at 178.

allege that any act took place in Delaware,[68] so the applicable statute of limitations for any of Plaintiffs' claims will be the shorter of the federal, New Jersey, or Delaware law governing Plaintiffs' claims.

Construing the allegations of the Complaint with the "forgiving eyes" this court routinely evaluates submissions from self-represented litigants,[69] Plaintiffs expressly assert three claims: breach of the PSA (Count I);[70] a claim seeking a declaratory judgment that Defendants cannot foreclose on the 2007 Mortgage because the associated note was paid off when the loan was securitized (Count II);[71] and a claim that Defendants engaged in "predatory lending" practices relating to Plaintiffs' various mortgages and refinancings for the Property in the 2004–2007 timeframe (Count III).[72] Plaintiffs also assert a free-floating claim that Defendants violated the federal Real Estate

---

[68] *See, generally*, Compl.

[69] *E.g.*, *Hall v. Coupe*, 2016 WL 3094406, at *3 (Del. Ch. May 25, 2016).

[70] *See* Compl. ¶¶ 19–28 (Count I). Count I is titled as a promissory estoppel claim (*see* Compl. at 6), but it alleges "Defendants, and each of them, violated the pertinent terms of the PSA" (*id*. ¶ 28.e), so the court treats it as a claim for breach of the PSA.

[71] *See* Compl. ¶¶ 29–37. Plaintiffs refer to this count as "Defendants Cannot Foreclose on a Paid Note." *See id.* at 10.

[72] *See* Compl. ¶¶ 39–45 (Count III).

Settlement Procedures Act[73] by failing to respond to a Qualified Written Request sent to Nationstar in 2013.[74]

The court addresses each in turn.

### a. Breach of the PSA[75]

The PSA is a contract. Breach of contract is a legal claim, but Plaintiffs seek both equitable and legal relief for Defendants' alleged breach of the PSA, so the court applies the doctrine of laches to this claim. Plaintiffs allege the first breach of the PSA occurred in 2007.[76] Whether the statute of limitations for this claim is governed by Delaware or New Jersey law, the 17 years between this breach and the filing of this action is well outside either

---

[73] 12 U.S.C. §§ 2601–2617 ("RESPA").

[74] *See* Compl. (handwritten ¶ 4 ("On May 9, 2013, Ms. Richardson sent a QWR to Nationstar Mortgage."), handwritten ¶ 7 (seeking "[c]ompensatory damages resulting from defendants' violation [of] . . . RESPA"). RESPA is mentioned nowhere else in the Complaint. Under RESPA, a borrower can submit a qualified written request ("QWR") to a mortgage servicer to request information about the servicing of the loan or to tell the servicer why the borrower thinks their account is in error. 12 U.S.C. § 2605(e); *see also* 12 C.F.R. §§ 1024.35, 1024.36. A mortgage servicer violates RESPA if they fail to respond to the QWR. 12 U.S.C. § 2605(f). The Complaint does not identify the contents of Plaintiffs' 2013 QWR, nor did Plaintiffs attach the 2013 QWR to the Complaint. *But see* Compl. Ex. B (May 22, 2013 letter from Nationstar to plaintiff Richardson acknowledging receipt of May 9, 2013 correspondence).

[75] This analysis assumes, of course, Plaintiffs have standing to allege breach of the PSA, which, for the reasons the court explained earlier, they do not.

[76] Compl. ¶ 12.

– 28 –

jurisdiction's statute of limitations.[77]  This cause of action is presumptively

untimely under the doctrine of laches.

### b.    Improper Foreclosure on a Paid Note

It is difficult to discern what law Plaintiffs say was violated in Count

II.[78]  The crux of the claim is that Defendants[79] cannot foreclose on the 2007

Mortgage because the note associated with the 2007 Mortgage was paid off

when it was securitized, and that sometime in the past decade Defendants

fraudulently manufactured evidence to claim ownership of the underlying

note.[80]   Plaintiffs conclude Count II by asking the court to enjoin the

---

[77] *See* 10 *Del. C.* § 8106 (default limitations period for breach of contract claims in Delaware is three years); N.J. STAT. ANN. § 2A-14.1 (breach of contract claims in New Jersey are subject to a six-year limitations period).  There are no allegations nor is there any evidence in the record from which the court could conclude that the PSA contains an extended statute of limitations period such that Title 10, Section 8106(c) might apply.  But even if there were, Title 10, Section 8121 would require application of New Jersey's six-year limitations period.

[78] *See* Compl. ¶¶ 29–37.

[79] Plaintiffs assert Count II against all defendants, even though the only entity which has sought to foreclose on the 2007 Mortgage is New Residential.  *Compare* Compl. ¶¶ 29–37, *with* Foreclosure Compl. at 1 (listing New Residential as the sole plaintiff).

[80] Compl. ¶¶ 31–32.  Plaintiffs do not limit their argument to the 2007 Mortgage and its associated note.  On the contrary, they assert that the securitization of mortgage notes by anyone—the entire industry—is impossible because mortgage notes "cannot be both paid and securitized and still outstanding" so "[t]here is no injured party to whom a debt is owed at this time or at the time of filing of this foreclosure." *Id.* ¶¶ 29, 32.  *See also id.* ¶ 29 ("That is the paradox in securitized original [n]otes; they are first paid when securitized.").

– 29 –

Property's foreclosure "pursuant to the doctrine of promissory estoppel,"[81] but the claim really seems to request a declaratory judgment that the Foreclosure Action was wrongful because nothing was owed on the 2007 Mortgage.[82]

Viewed through that lens, the court cannot conclude that Count II is untimely, as it would not have arisen until New Residential filed the Foreclosure Action on November 15, 2022,[83] less than two years before Plaintiffs filed the Complaint here.[84] The court will therefore not dismiss Count II as untimely. But viewing Count II through this lens makes it that much more clear why Count II must be dismissed as an impermissible collateral attack on the Foreclosure Judgment: Plaintiffs contend that the filing of the Foreclosure Action itself was the wrongful act triggering liability under Count II. The New Jersey Court disagreed, definitively ruling that New Residential may foreclose on the Property when it issued the Foreclosure Judgment.

---

[81] Compl. ¶ 37.

[82] Compl. ¶ 32 ("There is no injured party to whom a debt is owed at this time or at the time of filing this foreclosure. Denies that there is any outstanding principal balance or accrued interest or unpaid expenses of any kind to any creditor until the present date.").

[83] *See* Foreclosure Compl., *supra* n.13.

[84] The court says "appears to be timely" because the difficulty in discerning the actual substantive claim underlying Count II makes it impossible to identify the applicable statute of limitations.

### c. Predatory Lending

Turning to Count III, Plaintiffs' predatory lending claim, Plaintiffs also appear to seek both equitable and legal relief for it, so the court applies the doctrine of laches. "Predatory lending" is not a denominated cause of action under federal, New Jersey, or Delaware law, and it is impossible to tell from the Complaint what law Plaintiffs think was violated.[85] But it does not matter—whether the predatory lending claim might arise under the federal Truth in Lending Act,[86] the New Jersey Consumer Fraud Act,[87] the Delaware Consumer Fraud Act,[88] common law fraud, or breach of contract, the relevant statutes of limitations are all significantly shorter than the 16 years between the last concrete "predatory" act complained of in the Complaint (December

---

[85] The predatory lending claim also suffers from conclusory allegations of wrongdoing, some of which sound in fraud, with no attempt to plead fraud with particularity. *See* Compl. ¶¶ 39–44. It also makes internally inconsistent statements, like alleging all three defendants here made false representations in connection with the 2004 Mortgage (*id.* ¶ 39), even though that mortgage was, as the Complaint itself alleges, issued by a different entity (*id.* ¶ 6). And it engages in temporal gymnastics, taking conduct purportedly occurring in the 2004–2007 timeframe and applying it to an entity (New Residential) that the Division of Corporations' records indicate was not formed until September 27, 2019. *Compare* Compl. ¶ 39 (alleging defendants' "false representations" occurred "[o]n or about August 16, 2004, September 22, 2006, [and] December 11, 2007 . . ."), *with Entity Details, File Number 7629716*, Delaware Department of State: Division of Corporations (Aug. 25, 2025), https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx.

[86] 15 U.S.C. §§ 1601–1667f.

[87] N.J. STAT. ANN. §§ 56:8-1–8-25.

[88] 6 *Del. C.* §§ 2511–2527.

2007) and Plaintiffs filing the Complaint (July 2024).[89] Count III is presumptively untimely under the doctrine of laches.

### d. Violation of RESPA

Claims for violation of the mortgage servicing provisions of RESPA, including claims that servicers failed to respond to QWRs, are subject to a three-year statute of limitations.[90] Plaintiffs submitted their QWR to Nationstar on May 9, 2013 and Nationstar acknowledged receipt of the QWR on May 22, 2013.[91] If, as Plaintiffs allege, Nationstar never responded further to the QWR, then their claim that Nationstar violated RESPA arose no later than June 2013, more than 11 years before Plaintiffs filed the Complaint. Plaintiffs' RESPA claim is untimely.[92]

---

[89] *See* 15 U.S.C. § 1640(e) (for Truth in Lending Act claims arising under 15 U.S.C. §§ 1639, 1639b or 1639c, a plaintiff has three years from the date of violation to bring a claim for damages; other claims are subject to a one-year limitations period); *Catena v. Raytheon Co.*, 145 A.3d 1085, 1090 (N.J. Super. App. Div. 2016) (claims for violation of the New Jersey Consumer Fraud Act or common law fraud are subject to a six-year statute of limitations); *State ex rel. Brady v. Pettinaro Enters.*, 870 A.2d 513, 526 (Del. Ch. 2005) (private claims under the Delaware Consumer Fraud Act are subject to 10 *Del. C.* § 8106's three-year limitations period); *Winklevoss Cap. Fund, LLC v. Shaw*, 2019 WL 994534, at *5 (Del. Ch. Mar. 1, 2019) (common law fraud claims in Delaware must also be brought within 10 *Del. C.* § 8106's three-year limitations period); N.J. STAT. ANN. § 2A-14.1 (breach of contract claims in New Jersey are subject to a six-year limitations period).

[90] 12 U.S.C. § 2614.

[91] *See* Compl. Ex. B.

[92] Only legal relief—in the form of actual and statutory damages—is available for RESPA violations. 12 U.S.C. § 2605(f). The court therefore applies the statute of limitations for RESPA without considering laches. *See Lebanon Cnty. Empls.' Ret.*

## 2. The Discovery Rule Does Not Save Plaintiffs' Claims For Breach of the PSA, Predatory Lending, or Violation of RESPA

To counter Loan Defendant's untimeliness argument, Plaintiffs offer only one basis on which this court might conclude that the statute of limitations or laches does not preclude Plaintiffs' claims for breach of the PSA, predatory lending, and violation of RESPA. According to Plaintiffs, their claims are not precluded because "they only recently learned of these [claims] despite due diligence."[93] The court interprets this statement as

_Fund v. Collis_, 287 A.3d 1160, 1194 (Del. Ch. 2022) (noting that for legal claims seeking legal relief, the court applies the applicable statute of limitations). The court notes Plaintiffs argue in their opposition that the RESPA claim is not untimely because they served a new QWR on Nationstar in July 2024 and Nationstar did not respond to it. _See_ D.I. 29 at 1 ("Defendants are ignoring . . . the fact that a July, 2024 QWR was served and received no response[.]"). This new QWR was sent the same day Plaintiffs filed the Complaint, so it is no surprise the Complaint does not mention it. _Compare_ D.I. 29 Ex. D at 7 (containing handwritten date of July 22, 2024), _with_ Compl. at 1 (showing File & ServeXpress time stamp of 4:00 p.m. on July 22, 2024). As the court has noted, Plaintiffs cannot inject new issues into this case through their opposition, so the court does not consider the new QWR here. _See_ Pls.' Opp. Br., _supra_ n.31; _see also Carroll v. Burstein_, 2025 WL 2446891, at *7 n.69 (Del. Ch. Aug. 25, 2025) ("Briefs relating to a motion to dismiss are not part of the record and any attempt contained within such documents to plead new facts or expand those contained in the complaint will not be considered.") (quoting _Orman v. Cullman_, 794 A.2d 5, 28 n.59 (Del. Ch. 2002)).

[93] D.I. 29 at 4.

– 33 –

Plaintiffs arguing that the discovery rule[94] is enough to justify ignoring the applicable statutes of limitations.

"Even after a cause of action accrues, the 'running' of the limitations period can be 'tolled' in certain circumstances." *Lehman Bros. Hldgs., Inc. v. Kee*, 268 A.3d 178, 186 (Del. 2021) (citing *Wal-Mart Stores, Inc. v. AIG Life Ins.*, 860 A.2d 312, 319 (Del. 2004)). "Under the 'discovery rule' the statute is tolled where the injury is 'inherently unknowable and the claimant is blamelessly ignorant of the wrongful act and the injury complained of.'" *Wal-Mart*, 860 A.2d at 319 (quoting *Coleman v. PricewaterhouseCoopers, LLC*, 854 A.2d 838, 842 (Del. 2004)). If the discovery rule applies, "the statute of limitations is tolled until the plaintiff discovers the 'facts constituting the basis of the cause of action *or* the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery of such facts.'" *Lehman Bros. Hldgs.*, 268 A.3d at 186 (quoting *Wal-Mart*, 860 A.2d at 319).

Here, Plaintiffs' claims are untimely, and they do not plead sufficient facts to support application of the discovery rule. Plaintiffs' conclusory assertions fail to allege when or how they discovered the claims or why they

---

[94] Also referred to as the "inherently unknowable injury" doctrine. *See Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 2012 WL 3201139, at *22 (Del. Ch. Aug. 7, 2012).

could not have discovered them earlier—in other words, whether Plaintiffs were blamelessly ignorant. The discovery rule does not overcome the application of the statutes of limitations. The claims are time-barred.

## IV.    CONCLUSION

Plaintiffs are understandably unhappy with the New Jersey Court's ruling that New Residential can foreclose on and sell the Property. But their unhappiness there—where they had a full and fair opportunity to litigate their claims—does not entitle them to a do-over here. I recommend that the complaint be dismissed in its entirety for failure to state a claim upon which relief can be grated, whether on grounds of *res judicata*, the collateral attack doctrine, lack of standing, or untimeliness.

This is a final report. Under Court of Chancery Rule 144(d)(1), any party taking exceptions to this report or to a prior report issued in this case must file a notice of exceptions by September 9, 2025.